**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 07-cv-01275-LTB

IN RE:

D.E. FREY GROUP, INC.,

    Debtor.


D.E. FREY GROUP, INC.,

    Appellees-Plaintiffs,

v.

FAS HOLDINGS, INC.,

    Appellant-Defendant.
_____

**MEMORANDUM OPINION AND ORDER**
_____

Babcock, J.,

    Appellant, FAS Holdings, Inc. ("FAS"), appeals from the Judgment entered against FAS and in favor of Appellee, D.E. Frey Group ("Frey"), in the United States Bankruptcy Court for the District of Colorado on June 6, 2007, as well as the Findings of Fact, Conclusions of Law, and Ruling ("Ruling") dated June 6, 2007, and from all underlying orders and rulings that became final upon entry of the Judgment dated June 6, 2007. Oral argument would not materially assist in the determination of this motion. After consideration of the papers and the case file, and for the reasons set forth below, I VACATE the June 6, 2007, Judgment and Ruling and REMAND with

direction to transfer this case to the United States District Court for the Southern District of New York.

## I. FACTS

In September 2001, Frey—a retail securities broker-dealer—was notified by the National Association of Securities Dealers that there was an aggregate deficit of approximately $2.8 million in Frey's accounts and was served a cease and desist order for failing to meet the minimum net capital requirements set by the Securities and Exchange Commission. As a result, Frey's brokers could no longer engage in the trade of securities. Recognizing that the brokers were independent contractors who could readily move to another broker-dealer, Frey sought a swift infusion of outside investment capital. Frey entered into an agreement (the "Contract") with FAS wherein FAS agreed to advance Frey more that $2 million—to cover certain of Frey's financial obligations and to cover Frey's operating and other expenses—in exchange for the non-exclusive right to service Frey's accounts and the right to negotiate the sale of the combined FAS and Frey accounts.

Under the Contract, the parties agreed that in the event of the sale or public offering of FAS—including the Frey accounts—Frey would share a portion of the proceeds in accordance with the formula uttered in Section 2.3 of the Contract (the "Purchase Price"). Such a sale or public offering is referred to in the Contract as a "Liquidity Event." FAS had the "full and sole discretion to make all decisions of any and every kind concerning the Liquidity Event, including, but not limited to, whether or not to consummate the Liquidity Event." Contract ¶ 2.3(c). FAS agreed to notify Frey "of the material terms of the Liquidity Event 30 days before the closing thereof, where practical." Contract ¶ 2.3(d). Frey retained the right to transfer its interest to another party at any time, provided Frey obtained the written consent of every customer and

broker with an account to be transferred and provided Frey repaid FAS all monies advanced and incurred in the acquisition and operation of Frey. Contract ¶ 3.4.

The parties agree that a Liquidity Event occurred on July 22, 2002, when FAS was acquired by Wells Fargo & Co. ("Wells Fargo"). FAS did not notify Frey of the Liquidity Event until after the acquisition was complete.

Wells Fargo Securities, Inc., a wholly-owned subsidiary of Wells Fargo, calculated the Purchase Price at approximately $4 million. When the advances Frey was obligated to pay FAS were deducted, FAS was obligated to pay Frey approximately $1.161 million. FAS deposited this amount in an escrow account. Frey disputed the calculations of Wells Fargo Securities and claimed it was owed additional monies.

## II. PROCEDURAL HISTORY

On February 5, 2004, Frey filed a voluntary petition with the United States Bankruptcy Court, District of Colorado ("Bankruptcy Court"), for relief under Chapter 11 of the Bankruptcy Code. *In re D.E. Frey Group, Inc.*, Case No. 04-11906 (citations to this docket referred to herein as "**Bk. Docket**"). Frey listed the approximately $2.7 million advanced and incurred by FAS in the acquisition and operation of Frey as contingent, unliquidated, and disputed. [**Bk. Docket # 105**]. As required by FED. R. BANKR. P. 3003(c)(2), FAS filed a proof of claim. [**Bk. Docket # 103**]. Thereafter, in April 2005, Frey filed an adversary proceeding against FAS disputing FAS's proof of claim and asserting numerous affirmative contract and tort claims. *In re D.E. Frey Group, Inc.*, Case No. 05-1356 (citations to this docket referred to herein as "**Adv. Docket**").

Prior to trial, the Bankruptcy Court dismissed Frey's seventh claim for relief—"Turnover"—and granted summary judgment in favor of FAS on all of Frey's tort claims and Frey's request for punitive damages. [**Adv. Docket ## 33, 144**]. A bench trial commenced on March 19, 2007, on Frey's three remaining claims for relief: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) request for a declaration that creditor Louise Rogers had priority over FAS's setoff claim under the Contract ("setoff claim"). At the close of Frey's case on March 26, 2007, the Bankruptcy Court dismissed the setoff claim. [**Adv. Docket # 154**].

On June 6, 2007, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Ruling [**Adv. Docket # 160**], and the clerk entered a Judgment in favor of Frey on its breach of contract claim and dismissed Frey's claim for breach of the covenant of good faith and fair dealing [**Adv. Docket # 161**]. The Bankruptcy Court held the Purchase Price should have been approximately $9.5 million, and—after deducting advances made by FAS—Frey was entitled to $6,562,473 plus interest. This appeal by FAS followed, and Frey filed a cross appeal.

### III. STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. 28 U.S.C. § 158(a); FED. R. BANKR. P. 8013. A bankruptcy court's legal conclusions are reviewed *de novo*, and factual findings are reviewed for clear error. *In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008). On mixed questions of law and fact, I apply *de novo* review if the question primarily involves the consideration of legal principles and apply the clearly erroneous standard if

the question is primarily a factual inquiry. *In re Wes Dor, Inc.*, 996 F.2d 237, 241 (10th Cir. 1993).

## IV. ISSUES RAISED BY FAS ON APPEAL

FAS raises five issues on appeal: (1) the Bankruptcy Court failed to enforce a forum selection clause in the Contract that required the parties to litigate their claims in New York; (2) the Bankruptcy Court abused its discretion by allowing Frey to submit a supplemental expert report four business days prior to trial; (3) the Bankruptcy Court erred in interpreting paragraph 2.3(c) of the Contract; (4) the Bankruptcy Court misapplied New York law and the Contract when determining damages; and (5) the Bankruptcy Court erroneously relied on inadmissible or improperly admitted evidence when calculating damages. As I hold the Bankruptcy Court improperly refused to enforce the forum selection clause, I do not reach the remaining issues.

The enforceability of a forum selection clause is reviewed *de novo*. *American Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 925 (10th Cir. 2005). Under paragraph 9.3 of the Contract, FAS and Frey explicitly agreed that the state and federal courts of New York County, New York, would be the exclusive venue for and have exclusive jurisdiction over litigation of disputes arising thereunder. Paragraph 9.3 of the Contract reads:

> Governing Law; Jurisdiction. THIS AGREEMENT AND ALL ACTS AND TRANSACTIONS PURSUANT HERETO AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO SHALL BE GOVERNED, CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW. EACH OF THE PARTIES TO THIS AGREEMENT CONSENTS TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE COURTS OF THE STATE AND FEDERAL COURTS OF NEW YORK COUNTY, NEW YORK. THE PARTIES MAY, IF MUTUALLY AGREEABLE, SUBMIT ANY DISPUTE BETWEEN THEM TO MEDIATION PRIOR TO THE INSTITUTION OF LITIGATION.

The Bankruptcy Court—despite noting "there is no question but that all these disputes arise from the Contract containing the New York forum selection clause"—nonetheless declined to dismiss or transfer Frey's complaint. FAS argues this was error because (A) forum selection clauses are entitled to a presumption of validity by the Bankruptcy Court; and (B) Frey did not meet its burden of showing the forum selection clause should not be enforced. I agree with FAS on both points.

A. Forum selection clauses are entitled to a presumption of validity by the Bankruptcy Court

Where a forum selection clause agreed to during arms-length negotiations by sophisticated parties—which is not disputed here—specifies venue and jurisdiction with mandatory or obligatory language—which is also not disputed here—the clause is presumptively valid and must be enforced unless the party seeking to avoid the agreed-to forum demonstrates that enforcement would be unreasonable under the circumstances. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("*Bremen*"); *Milk 'N' More, Inc., v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992); *ADT Sec. Servs., Inc., v. Apex Alarm, LLC*, 430 F. Supp. 2d 1199, 1201 (D. Colo. 2006). A party meets this burden if it can show trial in the selected forum would be inherently unfair, that the clause was procured by fraud or overreaching, or that enforcement would "contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15; *see also ADT*, 430 F. Supp. 2d at 1204 (citing *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992)). As neither the parties nor the record suggest the forum selection clause was reached through fraud or

overreaching, this appeal focuses on whether enforcement in the selected forum would be inherently unfair or violate public policy.

Although recognizing the authority of *Bremen*, the Bankruptcy Court held that the fairness inquiry was unnecessary because "the litigation in issue involves a core proceeding in the bankruptcy." [**Adv. Docket # 33**]. The Bankruptcy Court relied on a group of cases purportedly holding that "where a proceeding falls within a bankruptcy court's core jurisdiction, a forum selection clause will not override" because "public policy favors centralization of bankruptcy proceedings in the bankruptcy court where the case is pending." *See, e.g., In re Iridium Operating LLC*, 285 B.R. 822, 837 (Bankr. S.D.N.Y. 2002); *In re N. Parent, Inc.*, 221 B.R. 609, 621 (Bankr. D. Mass. 1998) (citing *In re Wheeling-Pittsburgh Steel Corp.*, 108 B.R. 82, 85 (Bankr. W.D. Pa. 1989)). Such reliance was misplaced.

The language of the Bankruptcy statute is permissive, not mandatory, even for core civil proceedings. *See In re Innes*, 184 F.3d 1275, 1283–84 (10th Cir. 1999); *see also* 28 U.S.C. § 157(b)(1) ("Bankruptcy judges *may* hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11.") (emphasis added); 28 U.S.C. § 1334(b) ("the district courts shall have original *but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11") (emphasis added); 28 U.S.C. § 1412 ("A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."). Indeed, "the only case[] over which the district court has exclusive jurisdiction is . . . the bankruptcy petition itself." *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 66 (1st Cir. 2002).

"Merely because the court has the authority to render a decision does not mean it should do so." *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1068 (5th Cir. 1997) (citation omitted). As the jurisdictional language is not mandatory in the absence of a forum selection cause, jurisdiction—in light of the Supreme Court's ruling in *Bremen*—can hardly be considered mandatory when the parties have agreed to a forum selection clause. Eschewing *Bremen*, however, the Bankruptcy Court applied the "law" of several bankruptcy cases—none of which were decided on appeal and none of which are binding in this Circuit—to create a *per se* rule that forum selection clauses are unenforceable in core bankruptcy proceedings. While most of the cases cited do not stand for the proposition relied upon by the Bankruptcy Court, to the extent any of the cases do support such a proposition, it is contrary to law.

The evolution of the "public policy" consideration in the bankruptcy context appears to begin with *In re Ellwood City Iron & Wire Co.*, 59 B.R. 53 (Bankr. W.D. Pa. 1986). *Ellwood* held, without citing any authority, that—a forum selection clause notwithstanding—the contract dispute at issue was "a core proceeding, and must be heard in the Bankruptcy Court." *Id*. at 55. Prior to such analysis, however, the Bankruptcy Court applied *Bremen*, and held the forum selection clause at issue should not be given the controlling effect mandated by *Bremen* because it was not the product of arms-length negotiations. *Id*. at 54. Accordingly, the debtor was not required to make a "strong showing" that the forum selection clause was unfair or violated public policy. *Id*. *Ellwood*—far from abdicating *Bremen*—explicitly applied *Bremen* to the facts at bar and determined that the combined *Bremen* factors weighed in favor of ignoring the forum selection clause.

The complete *Bremen* analysis has been applied in the great majority of post-*Ellwood* cases concerning the "public policy" consideration in the bankruptcy context. Only two cases—both from the Southern District of New York—appear to stand for the broad proposition argued by Frey. *See Iridium*, *supra*, 285 B.R. at 837; *In re Commodore Int'l, Ltd.*, 242 B.R. 243, 261 (S.D.N.Y. 1999) (refusing to enforce a forum selection clause because of the "strong public interest in centralization of all core matters in the bankruptcy court"). Initially, I note the matters at issue in *Iridium* and *Commodore*—both actions by a creditors' committee to collect fraudulent and preferential transfers—are easily distinguishable from the posture here, where the debtor seeks to enforce a pre-petition contract to which it was a party. Claims arising under fraudulent and preferential transfers belong to the trustee or committee, not the debtor. *See Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir. 1977). As a creditors' committee generally would not have been party to a forum selection clause in a contract between the debtor and a creditor, the policy favoring enforcement of such clauses is not as compelling. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155 (3d Cir. 1989).

Moreover, although *Iridium* and *Commodore* did not undertake a fairness or overreaching analysis under *Bremen*—instead holding the public policy interest in centralization adequate to override the forum selection clause—both of these cases rely on the same broad misstatement of the law as the Bankruptcy Court below. *See Iridium*, *supra*, 285 B.R. at 837; *Commodore*, *supra*, 242 B.R. at 261. Tellingly—although only citing to the "public policy" language—*Iridium* and *Commodore* base their rulings entirely on prior case law applying the three *Bremen* factors. An analysis of the cases cited clarifies that they do not abdicate the rule of *Bremen*. *See, e.g., In re Sargent Elec. Co.*, 341 B.R. 514, 518–20 (Bankr. W.D. Pa. 2006) (applying *Bremen* and

holding the public policy of enforcing forum selection clauses prevailed over the public policy of centralizing bankruptcy proceedings); *In re Bennett Funding Group, Inc.*, 259 B.R. 243, 252 (N.D.N.Y. 2001) (applying *Bremen* and holding that no public policy consideration was necessary when the action was heard by a district court); *In re N. Parent, supra*, 221 B.R. at 622 (analyzing cases applying *Bremen* and holding that the "public policy" consideration—along with the other *Bremen* factors—should be considered when applying a forum selection clause in core bankruptcy proceedings, but holding that all non-core claims and all core claims "inextricably intertwined" with non-core claims should be transferred or dismissed to give effect to the parties forum selection clause); *In re Mercury Masonry Corp.*, 114 B.R. 35, 39 (Bankr. S.D.N.Y. 1990) (applying *Bremen* and holding the debtor would be unfairly burdened if the case were transferred and this factor—when combined with the public's interest in centralizing bankruptcy proceedings—mandated against dismissal); *In re Wheeling-Pittsburgh Steel Corp.*, *supra*, 108 B.R. at 85 (applying *Bremen* and holding public policy and manifest inconvenience to the debtor mandated against enforcing the forum selection clause).

      This distinction finds additional support in analysis of the treatment of arbitration clauses in contracts subject to bankruptcy proceedings. Enforcing an arbitration clause does not jeopardize the policy underlying the Bankruptcy Code's preference for centralization of disputes concerning the bankruptcy estate, even in core civil proceedings. *See MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108–10 (2d Cir. 2006); *In re Mercutio*, 402 F.3d 62, 66 (1st Cir. 2005). "As noted by the Supreme Court, arbitration agreements are merely forum selection clauses." *E.E.O.C. v. Woodmen of World Life Ins. Soc'y*, 479 F.3d 561, 570 (8th Cir. 2007) (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002)). Thus, "an agreement to arbitrate before a

specified tribunal is, in effect, a specialized kind of forum-selection clause" that is subject to *Bremen*. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974); *Riley*, *supra*, 969 F.2d at 957–58. In terms of determining whether to enforce a forum selection clause or an arbitration clause, "there is little difference between the two," and, accordingly, a motion to enforce a forum selection clause is "analytically indistinguishable from a motion to stay an action at law pending arbitration." *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997); *Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 769 (3d Cir. 1984). Thus—like an arbitration clause—the Bankruptcy Court here must enforce the forum selection clause unless the forum would be excluded as inherently unfair under *Bremen*.

### B. Frey did not meet its burden under *Bremen*

In the Tenth Circuit, "[b]ankruptcy courts should be reluctant to entertain questions which may be equally well resolved elsewhere." *First State Bank & Trust Co. of Guthrie, Okla. v. Sand Springs State Bank of Sand Springs, Okla.*, 528 F.2d 350, 354 (10th Cir. 1976). Rather than analyze the three *Bremen* factors, however, the Bankruptcy Court improperly created a bright line *per se* rule that presumed *Bremen* to be met any time a bankruptcy court considers a core proceeding. While there is a public policy consideration that *may be* impaired when core proceedings are transferred, the public policy consideration is only one factor and should not be given controlling weight in light of the permissive nature of bankruptcy jurisdiction. *See MBNA, supra*, 436 F.3d at 108–09. Moreover, in a case such as the one at bar—where the debtor was able to obtain confirmation of its reorganization plan long before the contract claims covered by the forum selection clause were tried to the court—any policy concern "must be lessened." *In re Almarc Corp.*, 94 B.R. 361, 366 (Bankr. E.D. Pa. 1988). Accordingly, the Bankruptcy Court

should have focused its analysis on whether enforcing the forum selection clause would be inherently unfair under *Bremen*.

The burden of showing trial in the selected forum would be inherently unfair is on the party seeking avoidance and that party "should bear a heavy burden of proof." *Bremen*, *supra*, 407 U.S. at 17. Although Frey responded to FAS's Motion to Dismiss or Abstain [**Adv. Docket # 26**], Frey did not even attempt to argue transfer to New York would be inherently unfair. Rather than hold Frey to its burden, however, the Bankruptcy Court improperly shifted the burden to FAS, holding that ignoring the forum selection clause "works neither a hardship nor an injustice on FAS." [**Adv. Docket # 33**]. To the extent, therefore, the Bankruptcy Court made any findings regarding the fairness of enforcing the forum selection clause, such findings do not address the fairness to Frey and are inapplicable to the *Bremen* analysis. Accordingly, Frey has not met its heavy burden under *Bremen* of showing that enforcing the forum selection clause would be unreasonable under the circumstances.

## V. CONCLUSION

A motion to enforce a forum-selection clause is treated as a motion to dismiss or transfer for improper venue. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1222 (10th Cir. 2000); *Riley*, *supra*, 969 F.2d at 956. In light of *Bremen*'s view that enforcement of a forum selection clause should not oust a court of jurisdiction, "it is abundantly clear that transfer is the appropriate remedy when a forum selection clause is applicable." *REO Sales, Inc. v. Prudential Ins. Co. of Am.*, 925 F. Supp. 1491, 1495–96 (D. Colo. 1996). As Frey did not meet its heavy burden of showing that venue in New York would be inherently unfair, the Bankruptcy

Court may not retain the case, but must transfer it pursuant to 28 U.S.C. § 1406 and FED. R. BANKR. P. 1014. *In re Sorrells*, 218 B.R. 580, 586 (10th Cir. BAP 1998).

Accordingly, I REVERSE the Bankruptcy Court's February 1, 2006, Order denying FAS's motion to dismiss based on the forum selection clause [**Adv. Docket # 33**], VACATE the Bankruptcy Court's June 6, 2007, Findings of Fact, Conclusions of Law, and Ruling [**Adv. Docket # 160**] and Judgment [**Adv. Docket # 161**], and REMAND with direction to transfer this case to the United States District Court for the Southern District of New York.

Dated: March   5  , 2008.

                                            BY THE COURT:

                                            s/Lewis T. Babcock
                                            LEWIS T. BABCOCK, JUDGE